# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | No. 13-20180-STA-tmp |
| | ) | |
| KENDALL JOY, | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND DENYING DEFENDANT'S MOTION TO SUPPRESS

Before the Court is Defendant Kendall Joy's Motion to Suppress (D.E. # 19) filed on July 25, 2013. The United States Magistrate Judge conducted a hearing on Defendant's Motion and entered a Report and Recommendation (D.E. # 53) on November 13, 2013, recommending that the Court deny Defendant's Motion. Defendant filed timely objections (D.E. # 59) to the Magistrate Judge's Report, to which the United States did not respond.[1] On January 21, 2014, the Court conducted a limited evidentiary hearing for the purposes of receiving additional testimony from the

---

[1] The Court notes that Defendant filed *pro se* objections (D.E. # 61) to the Report and Recommendation on January 8, 2014. The Court declines to consider this filing. Local Rule 83.1(d) states that any "party represented by counsel who has appeared in a case may not act on his or her own behalf unless that party's attorney has obtained leave of the court to withdraw as counsel of record, provided that the court may, in its discretion, hear a party in open court, notwithstanding the fact that the party is currently represented by counsel of record." Under the Local Rules of Court then, Defendant is precluded from acting on his own behalf except under narrow circumstances, which are not present in this case. Additionally, Defendant filed his objections outside of the fourteen (14) day time limit for raising objections to a report issued by a Magistrate Judge under 28 U.S.C. § 636(b)(1). Therefore, the Court does not consider Defendant's *pro se* objections.

Millington Police officers about Defendant's arrest and the search of Defendant's apartment. For the reasons set forth below, Defendant's Motion to Suppress is **DENIED**.

<u>BACKGROUND</u>

The Magistrate Judge proposed the following findings of fact, and neither party has raised any specific objection to these findings. Accordingly, the Court hereby adopts the Magistrate Judge's proposed findings of fact as follows.

On December 27, 2012, at approximately 1:00 p.m., Officer Paul Haulum responded to a police dispatcher's call of an aggravated assault by a male armed with a pistol at the Millington Oaks Apartments ("Millington Oaks") in Millington, Tennessee. Approximately two minutes later, Officer Haulum arrived at Millington Oaks and went to a parking lot facing an apartment building located at 4929 Navy Road.[2] Officer Haulum saw a tow truck parked in front of the building and three men standing near the truck. One of the men, Derrick Jones, identified himself as a repossession agent who was the victim of the aggravated assault. The other two men were fellow employees of the repossession company.

Jones provided Officer Haulum with the following information: he came to the parking lot to repossess a vehicle, and while he was hooking the vehicle to his tow truck, a black male (later identified as Kendall Joy) came out of the apartment building and told Jones to release the vehicle. Joy told a woman (later identified as Joy's girlfriend, Jasmine Warren) to go get a gun. Warren went

---

[2] Exhibit 1 to the suppression hearing was a color photograph of the apartment building in which apartment #1 is located and the parking lot that faces the building. According to the officers' testimony, the apartment building is two stories high, with apartment units on the ground floor and second floor. Joy's apartment building has eight units. The front door to the apartment building opens into a common area, where each unit has its own interior front door. Apartment #1 is on the ground floor, and as depicted in Exhibit 1, appears to be less than twenty yards away from the parking lot where the assault occurred.

into the apartment building and returned shortly with a large, semi-automatic gun, which she handed to Joy. Joy pointed the gun at Jones's head and told Jones he would kill him if Jones did not release the vehicle. Jones complied with Joy's demand and released the vehicle. Joy then retreated back into the apartment building, and Warren drove off in the vehicle that Jones had tried to tow.

Officer Haulum also questioned Jones's two co-workers, Jerickan McCracklin and Kenneth Minor. Both of the men confirmed Jones's version of the events. Officer Haulum then talked to Lakeisha King, a resident of Millington Oaks who lived in the same apartment building as Joy and who had witnessed the incident. King identified Joy and Warren as the residents of apartment #1 (located directly below King's apartment) and said that she saw Joy run back into his apartment.

Lieutenant Steven White, Officer Robert Akers, and another Millington Police Officer (an "Officer Wiggins"), arrived within five minutes of Officer Haulum's arrival.[3] Officer Haulum and Officer Akers knocked on the front door of apartment #1 and announced their presence. There was no response. Officer Haulum heard "some shuffling around" inside the apartment. Lieutenant White and Officer Akers then went to the rear of the apartment, knocked on the back door, and again announced their presence.[4] There was still no response. Lieutenant White heard something being moved inside the apartment and thought that someone might be trying to barricade the door.

The officers then contacted Millington Oaks's maintenance department for assistance. Jimmie Brassfield, the maintenance supervisor, arrived at the scene with a key to the apartment. Brassfield attempted to unlock the front door but was unsuccessful because the locks on that door had been changed. The officers then saw a man look out of the open front window of apartment #1

---

[3] These officers were delayed due to a train crossing.

[4] The apartment only had two exits, the interior front door and a back door.

and then saw him quickly shut and lock the window. Jones, who also saw the man at the window, stated, "There he is in the window." Brassfield and the officers attempted to lift open the front window but were unsuccessful. Brassfield then went with the officers to the back door, and using his key, unlocked the door. Lieutenant White announced his presence and entered through the back door, followed by Officer Akers with his police canine. Once inside, they found Joy in the living room area. The officers immediately placed him against the wall and handcuffed him. They patted him down but did not find any weapons on him. The officers removed Joy from the apartment and secured him in Officer Haulum's police car. According to Officer Haulum, approximately twenty to thirty minutes elapsed from the time he first arrived on the scene until the time the officers entered the apartment.[5]

Prior to the officers' entry into the apartment, they did not know if there were children or other adults besides Joy inside the residence. The officers became aware shortly after entering the apartment that there were three young children (all under the age of six) in a back bedroom.[6] Lieutenant White asked the children if there were any firearms in the apartment, to which the children responded that there were.[7] The children did not tell the officers where the firearms were

---

[5] Brassfield testified that approximately fifteen to twenty minutes elapsed from the time he was called to the scene by the officers to the time he opened the back door to the apartment.

[6] Lieutenant White testified that the officers were aware, based on prior incidents at apartment #1, that children had been present in the apartment when the police responded to those prior calls. However, the officers did not know that there were children inside the apartment on this particular call until after they entered the residence. As Officer Akers testified, he initially brought his police canine into the apartment with him but then took his canine out when he saw that children were present.

[7] At the suppression hearing, defense counsel stated that she intended to call as a witness Joy's daughter who, at the time of the hearing, was seven years old. However, defense counsel subsequently decided not to call Joy's daughter.

located.[8]  The officers conducted a protective sweep of the apartment, looking inside closets and bedrooms to make sure no one else was in the apartment. Lieutenant White testified that, in conducting the sweep, the officers did not move anything around or look through drawers.  During this sweep, the officers observed in plain view multiple firearms in the bedrooms and closets.  They did not, however, seize the weapons at that time.

Afterwards, Millington Police Detective Degruean Frazier arrived on the scene.  Detective Frazier, who had not been involved with the arrest or protective sweep, gathered information from the officers and then left to obtain a warrant to search the apartment.  In the affidavit for the search warrant, Detective Frazier stated:

> On 12/27/2012 at or about 12:55 officers of the Millington Police Department were dispatched to the 4929 Navy Rd. in Millington, TN regarding an assault. On arrival officers learned that a suspect later identified as Kendall Joy had threatened to shoot a wrecker driver, pointing a handgun at the driver's head, after he learned that the wrecker driver was attempting to repossess his vehicle. The wrecker driver, identified as Derrick Jones, described the suspect as a male black wearing no shirt and armed with a handgun.  The wrecker driver advised responding officers that the suspect fled into the apartment at 4929 Navy Rd #1. As officers approached the apartment, Lt. S. White observed a shirtless male black move the blinds from the window, then close them quickly as he saw the police. Lt. White heard children crying inside the apartment, and summoned apartment staff from the area to assist him with entry. Police officers made entry and secured the scene and the suspect.  Derrick Jones, the victim of the aggravated assault, identified the suspect, KENDALL JOY, as the person who had pointed the handgun at his head.  Your affiant asks that a warrant issue to search the residence at 4929 Navy Rd #1 for weapons, ammunition, and any

---

[8] The police incident report states, "[t]he children informed that there were multiple weapons in the residence, and told officers of their location." Lieutenant White, however, testified that the children only told the officers that there were weapons in the home but did not tell the officers exactly where the weapons were located. The Magistrate Judge credited the testimony of Lieutenant White. Further, this factual discrepancy is immaterial to the issues raised in the Motion to Suppress.

other illegal items.[9]

---

[9] As discussed above, the officers had no knowledge of the presence of any children inside the apartment just prior to forcing entry.  None of the officers heard any children crying from inside the apartment, contrary to that representation being made in the search warrant affidavit.  However, the Magistrate Judge concluded that the inclusion of this incorrect information was immaterial to the issues presented in the Motion to Suppress.  First, Joy did not challenge the legality of the search warrant in the Motion to Suppress.  Second, even if such a challenge had been made, Joy would not be entitled to a Franks hearing. In *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme Court held that, in certain circumstances, a criminal defendant is entitled to a hearing regarding the veracity of a sworn statement used by the police to procure a search warrant. "To obtain a Franks hearing, 'the defendant must make a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included in the affidavit.'"  *United States v. Hudson*, 325 F. App'x 423, 425–26 (6th Cir. 2009) (quoting *United States v. Stewart*, 306 F.3d 295, 304 (6th Cir. 2002)). "The purpose of a Franks hearing is to allow the defendant to challenge the truthfulness of statements in an affidavit in order to challenge the legality of a search warrant issued on the basis of the affidavit." *United States v. Sharp*, No. 1:09–cr–98, 2010 WL 1427292, at *3 (E.D. Tenn. Mar. 18, 2010). As explained by the Sixth Circuit:

> A defendant who challenges the veracity of statements made in an affidavit that formed the basis for a warrant has a heavy burden. His allegations must be more than conclusory. He must point to specific false statements that he claims were made intentionally or with reckless disregard for the truth. He must accompany his allegations with an offer of proof. Moreover, he also should provide supporting affidavits or explain their absence. If he meets these requirements, then the question becomes whether, absent the challenged statements, there remains sufficient content in the affidavit to support a finding of probable cause.

> *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990) (citations omitted); *see also Sharp*, 2010 WL 1427292, at *4 (quoting *Bennett*).

The Magistrate Judge concluded that based on the testimony at the suppression hearing, Joy had not sufficiently demonstrated that Detective Frazier included the statement with knowledge that the statement was false or with reckless disregard for the truth. At most, it appeared that Detective Frazier may have received inaccurate information from the officers at the scene, or perhaps misconstrued what had transpired prior to him arriving on the scene. Moreover, the Magistrate Judge found that even omitting the challenged statement, there remained sufficient content in the affidavit to support a finding of probable cause.  The affidavit stated that Joy pointed a gun at the wrecker driver's head, threatened to shoot the driver, and ran back into apartment #1. The affidavit further stated that responding officers saw a black male close the window when he saw the police, and after obtaining assistance from the apartment staff, entered the apartment and found Joy inside, who the victim later confirmed was the person who had

Detective Frazier made no mention in the affidavit that officers on the scene had knowledge of or had already seen firearms in the apartment. The warrant was executed at approximately 3:45 p.m. According to the police incident report, the officers found in one of the bedrooms, inside a basket, a Desert Eagle .44 magnum gun, which matched the description of the gun that Jones said Joy had used to threaten him. The officers also seized numerous firearms, magazines, and ammunition from the hallway closet, the two bedrooms, and a bedroom closet. On May 30, 2013, a federal grand jury returned an indictment charging Joy with five counts of being a convicted felon in possession of a firearm, in violation of 18 U.S.C. § 922(g).

In his Motion to Suppress, Defendant challenges the Millington Police's warrantless entry into his home as a violation of the Fourth Amendment. Defendant argues that no exigent circumstances were present to justify the officers' decision to force their way into his apartment. Therefore, the Court should suppress the firearms seized from the home after the arrest. The government responds that exigent circumstances did, in fact, excuse the warrantless entry and arrest in this case. According to the government, the officers were in hot pursuit of Defendant after he allegedly assaulted Jones, and Defendant's act of threatening Jones with a firearm posed a risk of danger to the police and others. Therefore, no constitutional violation occurred.

Following the suppression hearing, the Magistrate Judge ordered the parties to prepare additional memoranda of law briefing the protective sweep and, assuming that a constitutional violation had occurred, whether suppression was justified when weighing the benefits of deterrence

_____

pointed the gun at his head. Whether children were or were not present in the apartment or whether the officers heard children crying was irrelevant and, in any event, did not negate the existence of probable cause contained in the affidavit. Neither party has raised any objection to the Magistrate Judge's reasoning. Therefore, the Court adopts the Magistrate Judge's proposed holdings on these issues.

against the possible costs of suppression.  In its supplemental brief, the United States argued that the officers' protective sweep was proper.  Even if the sweep exceeded its permissible scope, the government asserted that the police would have discovered the firearms any way once the officers had obtained a search warrant.  The United States further argued that the officers acted in good faith when they entered the apartment without a warrant and conducted the protective sweep.  The officers only seized the firearms after they had obtained a search warrant.  Therefore, suppression was not warranted.  In his supplemental brief, Defendant argued that no exception to the warrant requirement excused the police's protective sweep of the apartment once they had forced their way inside.  Defendant also contends that the police's conduct was deliberate, reckless, recurrent, and systemic.  The police lacked any justification for forcing their way into Defendant's apartment and had ample time to obtain a warrant.  Defendant also argues that Detective Frazier may have included false information in the warrant affidavit, specifically, that the officers heard the sound of children crying in the apartment before they forced their way inside.  Defendant contends then that in the absence of any exigent circumstance, the officers forced entry simply to search the premises for contraband.  Therefore, suppression is warranted.

The Magistrate Judge has recommended that the Court deny Defendant's Motion to Suppress.  The Magistrate Judge began by noting that the police's warrantless entry into Defendant's home was presumptively unconstitutional.  Thus, the government had to show that some exigent circumstance was present to justify the police's conduct.  The Magistrate Judge concluded that the Millington Police's forced entry was not supported by any exigency.   First, the hot pursuit exception did not apply under the facts of this case.  The Magistrate Judge reasoned that the police did not arrive on the scene until Defendant had already retreated into his home.  As such, the officers did not witness

the alleged aggravated assault or Defendant's flight into his apartment. Indeed, the police did not pursue Defendant at all because Defendant had likely withdrawn into his home before the police were ever called. Therefore, the hot pursuit exception did not save the unconstitutional entry and arrest.

As for the risk of danger exception, the Magistrate Judge concluded that any threat of danger was insufficient in this case to justify the warrantless entry and arrest. Defendant had not discharged his firearm, and the police had no information to suggest that Defendant posed some specific danger. The police also had no reason to believe that children were present in the apartment on this particular occasion, though they knew from previous calls to this address that children resided there. Therefore, the officers' warrantless entry and arrest was unconstitutional.

The Magistrate Judge next held that the police exceeded their authority under *Buie v. Maryland* by conducting a protective sweep of the entire apartment. The officers did not limit their search to the area immediately adjoining the scene of the arrest and instead searched all of the bedrooms and closets on the premises. The Magistrate Judge found that the police had no reason to believe that another individual was present in the apartment who might jeopardize the officers' safety. Therefore, the scope of the *Buie* sweep violated the Fourth Amendment as well.

Despite his recommended holding that the entry, the arrest, and the protective sweep all violated Defendant's constitutional rights, the Magistrate Judge concluded that the exclusionary rule should not apply. The Magistrate Judge decided that the Millington Police would have inevitably discovered the firearms by obtaining and executing a search warrant. The Magistrate Judge noted that the warrant affidavit included none of the information gathered from the initial entry and protective sweep. The Magistrate Judge reasoned that if the police had not made the warrantless

arrest, they had probable cause to get an arrest warrant based on the testimony of the victim of the alleged crime and other witnesses at the scene. Thus, the police would have inevitably made the arrest. Furthermore, the police would not have found a firearm on Defendant's person and would have inevitably obtained a search warrant for the apartment and discovered the firearms. Therefore, the Magistrate Judge submitted that under the inevitable discovery doctrine, suppression of the evidence was not required.

In an alternative holding, the Magistrate Judge concluded that suppression was not proper because the benefits of deterrence did not outweigh the costs of suppression. The Magistrate Judge found that the Millington Police had not acted in a deliberate, reckless, or grossly negligent fashion. First, the Magistrate Judge noted that the circumstances in this case were substantially similar to the facts in *United States v. Bass*, 315 F.3d 561 (6th Cir. 2002). The Sixth Circuit in *Bass* held that a warrantless entry and arrest was justified under the risk of danger exception to the warrant requirement. Although the Magistrate Judge found critical factual distinctions between *Bass* and the case at bar, the Magistrate Judge reasoned that the many similarities between the two cases tended to show that the Millington Police had not acted recklessly or with gross negligence in this case. Second, the Magistrate Judge concluded that the officers' other conduct was reasonable under the circumstances. Defendant, an armed gunman, had allegedly committed the serious crime of aggravated assault. Even so, the police attempted to make the arrest in a deliberate fashion. The original responding officer, Officer Haulum, took his time to investigate and waited for proper back-up. The officers made peaceable attempts to get Defendant to come out and, when those efforts failed, decided to get a key to the apartment the rather than use force to gain entry. The Magistrate Judge further found that the officers acted reasonably in conducting a protective sweep of the

apartment because there were three children inside and the defendant's weapon was unaccounted for. Under all of these circumstances, the Magistrate Judge determined that the police had not acted recklessly or with gross negligence or a deliberate disregard for Defendant's rights. Therefore, the benefits of deterrence in this case did not outweigh the costs. For all of these reasons, the Magistrate Judge recommended that Defendant's Motion to Suppress be denied.

Defendant has filed timely objections to the Magistrate Judge's recommended conclusions of law. Defendant did not object to the Magistrate Judge's proposed findings of fact and objected only in part to the recommended conclusions of law. Specifically, Defendant argues that while the Magistrate Judge correctly held that the warrantless entry and arrest violated Defendant's constitutional rights, the inevitable discovery rule should not apply. There is no evidence in this case that the Millington Police was pursuing an independent line of investigation, which would have inevitably resulted in the discovery of the firearms in Defendant's apartment. As a result, the government must prove that some routine police procedure would have inevitably led to the discovery of the firearms, regardless of the improper entry, arrest, and protective sweep. Defendant emphasizes that the government did not prove any routine procedure that would have resulted in the officers entering and searching the residence for firearms. Defendant adds without elaboration, "just because the Millington Police sought and obtained a search warrant after the illegal arrest of Mr. Joy and the illegal protective sweep does not mean that it would have sought and obtained a search warrant it [sic] in this instance irrespective of the illegal arrest and protective sweep." Thus, the inevitable discovery rule should not apply.

As for the Magistrate Judge's application of the balancing test to determine whether the deterrent effect outweighed the costs of suppression, Defendant argues that police conduct in this

case was deliberate or at the very least reckless. Defendant has not specifically addressed all of the reasons given by the Magistrate Judge to support his conclusion that the officers' conduct was not deliberate, reckless, or grossly negligent. Defendant simply contends that "[n]o reasonable officer would have believed that there were exigent circumstances to enter the apartment without a warrant" or articulable facts to justify the protective sweep. Therefore, Defendant argues that the Court should reject the Magistrate Judge's recommendation and grant the Motion to Suppress.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636, the Court may refer a motion to suppress in a criminal matter to a magistrate judge for the purpose of conducting an evidentiary hearing and to submit proposed findings of fact and recommendations for the disposition of the motion.[10] The Court must "make a *de novo* determination of those portions of the report or specific proposed findings or recommendations to which objection is made."[11] However, the Court is not required to conduct *de novo* evidentiary hearing as part of its *de novo* review.[12] After reviewing the evidence, the Court is free to accept, reject, or modify the proposed findings or recommendations of the magistrate judge.[13] Moreover, the Court need not review, under a *de novo* or any other standard, those aspects of the report and recommendation to which no specific objection is made.[14] Rather, the Court may adopt

---

[10] 28 U.S.C. § 636(b)(1)(B).

[11] § 636(b)(1)(C).

[12] *United States v. Raddatz*, 447 U.S. 667, 674 (1980).

[13] § 636(b)(1)(C).

[14] *Thomas v. Arn,* 474 U.S. 140, 150 (1985).

the findings and rulings of the magistrate judge to which no specific objection is filed.[15]

## ANALYSIS

Based on its *de novo* review of the Magistrate Judge's report, Defendant's objections to the report, the evidence submitted at the limited hearing before this Court, and the entire record of the case, the Court hereby adopts the Magistrate Judge's Report and Recommendation and denies Defendant's Motion to Suppress. As a threshold matter, neither party has objected to the Magistrate Judge's proposed conclusion that the Millington Police violated Defendant's constitutional rights by entering his apartment, placing him under arrest, and conducting a protective sweep, all without a warrant. As the Magistrate Judge correctly noted, "an arrest carried out inside an arrestee's home without a warrant is presumptively unreasonable."[16] Therefore, the Court adopts the Magistrate Judge's proposed holdings that the police's warrantless entry, arrest, and protective sweep violated Defendant's constitutional rights. Having established that an improper arrest and protective sweep occurred, the Court must now decide the appropriate remedy.

Defendant seeks the suppression of the firearms seized from his apartment following his arrest on December 27, 2012. The Sixth Circuit has held that "[w]here the police effectuate an arrest in an illegal manner but nonetheless have probable cause to make the arrest, the proper Fourth Amendment remedy is to exclude only that evidence which is a fruit of the illegality."[17] The

---

[15] *Id.* at 151.

[16] Mag. J.'s Rep. & Recommendation 11–12 (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 477–78 (1971)); *see also New York v. Harris*, 495 U.S. 14, 18 (1990) ("The arrest warrant was required to 'interpose the magistrate's determination of probable cause' to arrest before the officers could enter a house to effect an arrest.") (citation omitted).

[17] *United States v. Hudson*, 405 F.3d 425, 439 (6th Cir. 2005)

Magistrate Judge concluded that the police had probable cause to arrest Defendant for the crime of felony aggravated assault. In the absence of exigent circumstances, however, the officers' warrantless arrest violated the Fourth Amendment. The Court holds that under these circumstances the proper remedy is to exclude "only that evidence which is a fruit of the illegality." Therefore, the issue presented is whether the firearms seized from Defendant's apartment after his arrest were the fruit of the illegal arrest or protective sweep. The Court holds that they were not.

The government has carried its burden to show that the firearms would have been inevitably discovered in this case, even if the Millington Police had not made their illegal arrest and protective sweep. The Court begins by emphasizing that the police did not seize any evidence from Defendant's apartment contemporaneously with the illegal arrest or the overbroad protective sweep. This is not a case then where the government illegally seized evidence and argues after the fact that it could have obtained a warrant.[18] The undisputed testimony showed that Defendant was unarmed at the time of his arrest and that the officers did not immediately recover the firearm used in the alleged assault.[19] It is further undisputed that Defendant was arrested in his living room. The

---

[18] *United States v. Bowden*, 240 F. App'x 56, 63 (6th Cir. 2007) ("Doubtless, the inevitable-discovery doctrine does not permit police, who have probable cause to believe a home contains contraband, to enter a home illegally, conduct a warrantless search and escape the exclusionary rule on the ground that the 'police could [have] obtain[ed] a warrant yet cho[ ]se not to do so.'").

[19] It is true that the police seized Defendant by placing him under arrest. However, Defendant himself cannot be fruit of the poisonous tree. The Supreme Court has explained that

> The exclusionary principle of *Wong Sun* and *Silverthorne Lumber Co.* delimits what proof the Government may offer against the accused at trial, closing the courtroom door to evidence secured by official lawlessness. [A defendant] is not himself a suppressible "fruit," and the illegality of his detention cannot deprive the Government of the opportunity to prove his guilt through the introduction of evidence wholly untainted by the police misconduct.

officers observed firearms only in the bedrooms and closets of the apartment and only as part of their overly broad protective sweep. And even though officers observed firearms in plain view during their protective sweep, they did not actual seize any of the weapons before they obtained a warrant to search the dwelling. Strictly speaking then, the Millington Police did not come by any of the evidence, which is the subject of Defendant's Motion to Suppress, during the arrest or protective sweep. The officers seized th evidence only after they had obtained a search warrant.

The "ultimate question" then is "whether the search pursuant to warrant was in fact a genuinely independent source of the information and tangible evidence at issue" or whether the police's "decision to seek the warrant was prompted by what they had seen during the initial entry."[20] "The inevitable-discovery doctrine provides that where 'tainted evidence would be admissible if in fact discovered through an independent source, it should be admissible if it inevitably would have been discovered.'"[21] For example, in *Murray*, police improperly entered a warehouse without a warrant and discovered several "burlap-wrapped bales" containing marijuana.[22] The officers did not seize the narcotics but left the warehouse and obtained a search warrant.[23] Notably, the warrant affidavit did not include any information gathered during the initial search.[24] Even then, the Supreme Court remanded the case for further consideration of whether the police "would have sought a

---

*United States v. Crews*, 445 U.S. 463, 474 (1980).

[20] *Murray v. United States*, 487 U.S. 533, 542 (1988).

[21] *United States v. Witherspoon*, 467 F. App'x 486, 490 (6th Cir. 2012) (quoting *Murray,* 487 U.S. at 539).

[22] *Murray,* 487 U.S. at 535.

[23] *Id.*

[24] *Id.* at 536.

warrant if they had not earlier entered the warehouse."[25]

Here the Magistrate Judge has recommended that the Court apply the inevitable discovery doctrine and hold that police would have discovered the firearms seized from Defendant's apartment in due course, with or without the warrantless arrest and the improper protective sweep. The Magistrate Judge's full reasoning on the application of the doctrine was as follows:

> The officers' only alternative to forcing entry into Joy's apartment would have been to secure an arrest warrant, which they could have obtained based on the ample probable cause that Joy had committed a violent felony. Jones identified Joy when he saw Joy looking out the window, and King identified Joy as her downstairs neighbor who she had seen running back into his apartment. Upon entering the apartment, the officers would have discovered that the gun was missing. The missing firearm, by itself, undoubtedly would have caused the officers to obtain a search warrant, as it is improbable that the officers would have walked away from the scene without the gun.

The Court finds that the Magistrate Judge's analysis is sound, though there was no evidence in the record before the Magistrate Judge answering the "ultimate question" posed in *Murray*: whether the Millington Police "would have sought a warrant if they had not earlier" conducted the protective sweep and discovered firearms in Defendant's apartment.[26]

To the extent that there was no proof on this point, the Court received additional testimony at the limited hearing, showing that the Millington Police sought and obtained a warrant not because of what they discovered during the protective sweep but because they did not find a firearm on Defendant's person at the time of his arrest.[27] Lieutenant White testified that the detective, and not

---

[25] *Murray,* 487 U.S. at 543.

[26] *Id.*

[27] Pursuant to 28 U.S.C. § 636(b)(1), when a party makes objections to a magistrate judge's recommendations, the Court may "receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1)(C).

the patrol officers who initially responded to the call and made the arrest, decided to obtain a search warrant for the apartment. Detective Frazier testified that he was the detective who made the decision to get the search warrant. Frazier stated that he had discretion about whether to seek a warrant and that he consulted with his superior officer about applying for the warrant before he sought it. Once he decided to get a warrant, Frazier prepared the warrant affidavit in this case and ultimately obtained the search warrant. Although Frazier stated that the other officers told him about the weapons present in the apartment, Frazier did not include any of this information in his warrant affidavit. More importantly, Frazier testified under oath that when he decided to seek a warrant, "it was about finding the weapon" used by Defendant in the assault and investigating a crime "committed with a weapon," and not simply to get at the firearms observed during the protective sweep. The Court credits this unrefuted testimony and concludes that the Millington Police's election to get the search warrant was not "prompted by what they had seen during the initial entry."[28] Therefore, on the "ultimate question" presented, the Court holds that the Millington Police's "search pursuant to warrant was in fact a genuinely independent source of the" firearms at issue. As such, suppression is not warranted.

Defendant objects that the government has failed to adduce evidence of routine police procedures, which would have inevitably led to the seizure of the firearms. The Sixth Circuit has held that "the inevitable discovery exception to the exclusionary rule applies when the government can demonstrate either the existence of an independent, untainted investigation that inevitably would have uncovered the same evidence or *other compelling facts* establishing that the disputed evidence

---

[28] *Murray,* 487 U.S. at 542.

inevitably would have been discovered."[29]  It is true that one of the specific showings the government

can make is that "routine procedures that police would have used regardless of the illegal search

would have resulted in the discovery of the disputed evidence."[30]  However, proof of police

procedures is not the only way in which the government can avail itself of the inevitable discovery

rule.  Detective Frazier's testimony shows that once the police failed to recover the firearm used in

the assault, Frazier would have obtained a search warrant, regardless of what the officers saw during

the illegal protective sweep.  The fact that the police had probable cause to arrest Defendant for a

firearms offense, the police did not recover the firearm at the time of Defendant's arrest, and

Detective Frazier's intent to seek the warrant in order to recover the firearm all amount to

"compelling facts establishing that the disputed evidence inevitably would have been discovered."[31]

Therefore, Defendant's objection on this issue is not persuasive.

Likewise, the cases cited by Defendant for support are factually distinguishable from the case

at bar.  In *United States v. Lazar*, the Sixth Circuit held that the inevitable discovery doctrine did not

apply.  In that case, certain medical records were seized pursuant to a search warrant as part of an

investigation into fraudulent medical billing.  The Sixth Circuit remanded for additional fact-finding,

holding that suppression was required as to any "records of patients whose names did not appear on

a patient list presented to the issuing Magistrate Judge."[32]  The Sixth Circuit rejected the argument

of the United States that it would have inevitably obtained the same records through a Department

---

[29] *United States v. Lazar*, 604 F.3d 230, 240 (6th Cir. 2010) (emphasis in original).

[30] *United States v. Ford*, 184 F.3d 566, 577 (6th Cir. 1999).

[31] *Lazar*, 604 F.3d at 240.

[32] *Id.* at 238

of Justice or grand jury subpoena.[33]  The Sixth Circuit discussed the lack of evidence showing that the United States "likely would have sought to acquire [the suspect's] records by subpoena, much less procured them in the same condition and as promptly as by seizing them with a warrant" or even "that it was ready to [subpoena the records] if, for any reason, it could not have done so—or would have chosen not to do so—with a search warrant."[34]

Clearly, *Lazar* involved a very different factual scenario than the one presented in the case at bar, the use of the government's subpoena power to obtain evidence.  More importantly, the analysis of the Court of Appeals and its application of the inevitable discovery doctrine turned on the specific use of subpoenas as opposed to search warrants, a distinction that is simply not relevant in the present case.  By contrast, the Millington Police did not just contemplate procuring a search warrant during its investigation; it actually obtained the warrant.  Detective Frazier's testimony establishes that the warrant was necessary to complete its investigation of Defendant's alleged aggravated assault, and not just one investigative option among others.  Therefore, *Lazar* does not support Defendant's objection.

The Sixth Circuit's decision in *United States v. Leake* also provides little support for Defendant's position.  Briefly, the Court finds that *Leake* presented a much more factually complex scenario than the facts presented in the case at bar.  The defendant in *Leake* sought to exclude what the Sixth Circuit described as "the most damning evidence against him," which connected Leake to

---

[33] *Id.* at 239.

[34] *Id.* at 240.

19

a larger drug conspiracy.[35]  All of the evidence "was either directly or derivatively obtained through the illegal search" of Leake's apartment.[36]  During the course of their investigation, the authorities questioned multiple witnesses about Leake's involvement in the conspiracy but always framed their questions with reference to information obtained in violation of the Fourth Amendment.  The government argued that it would have inevitably questioned the same witnesses and discovered the same facts connecting Leake to the conspiracy.  The Sixth Circuit disagreed and concluded that the evidence was the fruit of the poisonous tree because the government could not establish how it would have obtained the same information from the witnesses incriminating Leake without using the inadmissible leads gained in violation of the Fourth Amendment.[37]

In this case, on the other hand, the investigation into Defendant's alleged aggravated assault was relatively straightforward.  Police were on the scene within moments of the alleged crime and had eyewitness accounts from the victim himself and three other persons, information that gave the officers probable cause to suspect Defendant.  And as previously discussed, the only question presented is whether the police would have inevitably discovered the firearms seized from the residence, had they not first entered the apartment without a warrant and carried out an overbroad protective sweep.  Unlike *Leake*, the government has adduced evidence that it would have sought a search warrant and discovered the incriminating evidence, with or without the illegal arrest and the

---

[35] *United States v. Leake*, 95 F.3d 409, 420 (6th Cir. 1996).  The specific evidence was the testimony of a co-conspirator, information connecting Leake to the alias "John Sandusky," and evidence of a U–Haul receipt from a time Leake allegedly transported marijuana in furtherance of the conspiracy.  *Id.*

[36] *Id.* at 416.

[37] *Id.* at 417–419.

sweep.  Thus, the Sixth Circuit's decision in *Leake* does not alter the Court's conclusions.

Having decided that suppression is not required in this case, the Court need not address Defendant's objections to the Magistrate Judge's alternative holding.  Therefore, the Court adopts the Magistrate Judge's Report and Recommendation, and Defendant's Motion to Suppress is **DENIED**.

<u>CONCLUSION</u>

The Court holds that the police's entry into Defendant's apartment, the warrantless arrest, and the overbroad protective sweep violated the Fourth Amendment.  Nevertheless, the government has shown that the police would have inevitably obtained search warrant and discovered Defendant's firearms, despite the constitutional violations.  Suppression is not appropriate.  Therefore, the Magistrate Judge' Report and Recommendation is **ADOPTED** and Defendant's Motion to Suppress is **DENIED**.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: January 27, 2014.